UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHARLYNN YBANEZ QUINTANA,<br><br>Plaintiff,<br><br>v.<br><br>USAA LIFE INSURANCE COMPANY and USAA GENERAL INDEMNITY COMPANY, foreign insurers,<br><br>Defendants. | Case No. C19-397 RSM<br><br>ORDER GRANTING SUMMARY JUDGMENT IN PART AND DENYING MOTION FOR PROTECTIVE ORDER |

## I.   INTRODUCTION

This matter comes before the Court on Defendants' Motion for Summary Judgment, (Dkt. #20) and Motion for Protective Order (Dkt. #23). Defendants USAA Life Insurance Company ("USAA Life") and USAA General Indemnity Company ("USAA GIC") move for summary judgment dismissal of Plaintiff's claims related to personal injury protection ("PIP") coverage and life insurance death benefits. These claims are brought under breach of contract, negligence, Washington's Consumer Protection Act, insurer bad faith, and the Insurance Fair Conduct Act. For the reasons stated below, the Court GRANTS IN PART this Motion. The Court DENIES Defendants' subsequent Motion for Protective Order for failure to satisfy the meet-and-confer requirement of Local Civil Rule 26(c)(1).

ORDER GRANTING SUMMARY JUDGMENT IN PART AND DENYING MOTION FOR PROTECTIVE ORDER - 1

## II. BACKGROUND

### A. Insurance Coverage at Issue

#### 1. Personal Injury Protection Coverage

On August 20, 2012, Plaintiff Charlynn Ybanez Quintana applied online for an automobile insurance policy with USAA GIC. Dkt. #20-1. This policy covered her and her husband Daniel Quintana Martinez. *Id*. According to USAA GIC's records, Ms. Quintana checked the box representing that she was "authorized to act on behalf of Daniel" and e-signed the application. *Id*. Ms. Quintana left blank several boxes for amounts of PIP coverage and instead checked the box rejecting such coverage for this policy "and all subsequent renewals." *Id*. at 4.

That same day USAA GIC sent Ms. Quintana and her husband an Automobile Policy Packet. Page four lists the various forms of coverage, the limits of liability, and states, "THE FOLLOWING COVERAGE(S) DEFINED IN THIS POLICY ARE NOT PROVIDED FOR:… PERSONAL INJURY PROTECTION." Dkt. #20-3 at 6.

USAA GIC's records show that each subsequent renewal of the policy sent to Plaintiff included the same warning about PIP coverage. *See* Dkts. #20-5 through #20-14. Neither Plaintiff Quintana nor her husband had PIP coverage through USAA GIC from August 21, 2012, through at least August 21, 2014. *Id*.

Plaintiff Quintana did not make a PIP claim immediately after the June 20, 2014, incident. Over four years later, on February 7, 2019, her counsel wrote to USAA GIC to submit her PIP claim. Dkt. #20-1 ("Weitzel Decl."), ¶ 27.

//

//

ORDER GRANTING SUMMARY JUDGMENT IN PART AND DENYING MOTION FOR PROTECTIVE ORDER - 2

## 2. Life Insurance

In June of 2012 USAA Life issued two life insurance policies covering Mr. Martinez. Dkt. #20-17. The first was a 20-year level term life insurance policy providing $250,000 in coverage. *Id*. The second was a universal life policy with a $50,000 death benefit. Dkt. #20-18. Both policies were effective as of June 30, 2012. Dkt. #20-17 at 7; Dkt. #20-18 at 4. Plaintiff Quintana was the primary beneficiary under these policies. Both policies contained a suicide exclusion provision. The provision in the $250,000 Policy stated:

> **Suicide Exclusion** If the insured dies by suicide, while sane or insane, within 2 years from the Effective Date of the policy or from the effective date of the last reinstatement, if any, we will pay a reduced death benefit equal to: 1. The premiums paid for benefits on the Insured's life; less 2. The premiums paid for benefits on any person other than the Insured, unless otherwise provided in any rider attached to this Policy.

Dkt. #20-17 at 23; *see also* Dkt. #20-18 (provision in the $50,000 policy has slightly different wording).

## B. The Death of Mr. Martinez[1]

On June 20, 2014, Plaintiff Quintana picked up Mr. Martinez in her car "and knew he had been drinking heavily at a few local bars." Dkt. #20-19 (Medical Examiner's Report) at 3. The two of them were driving to a family event when they got into an argument about his drinking. *Id*. Plaintiff Quintana was behind the wheel and Mr. Martinez was in the passenger seat. While on Interstate Highway 5, Mr. Martinez "opened his passenger-side door and exited the vehicle." *Id*. He suffered multiple life-threatening injuries, was transported to Harborview Medical Center, and died the next day. *Id*. The Medical Examiner's Report indicates that "decedent possesses a history significant for previous suicidal threats/attempts related to

---

[1] The Court bases these facts on the records submitted by Defendants; Plaintiff does not contradict any of these facts in response to this Motion.

ORDER GRANTING SUMMARY JUDGMENT IN PART AND DENYING MOTION FOR PROTECTIVE ORDER - 3

depression and alcohol abuse." *Id*. The 2014 death certificate lists "suicide" as the manner of death. Dkt. #20-20.

## C. Plaintiff's Claim for Life Insurance

USAA Life was informed of the death and wrote to Plaintiff Quintana on July 1, 2014, providing her with the documentation necessary to file a claim for life insurance proceeds. Dkt. #20-21. This letter reminded Ms. Quintana that the death occurred within the first two years of coverage, *i.e.* "the contestable period." *Id*.

Ms. Quintana did not submit a claim immediately. USAA Life followed up with monthly letters reminding her to submit a claim. These letters went out every month for over a year—a total of 19 letters. *See* Dkts. #20-21 through #20-24.

On January 28, 2016, Ms. Quintana finally submitted a "Claimant's Statement." In filling out this form, she was required to provide the cause of death. She specifically wrote as the cause of death "Suicide." Dkt. #20-25 at 2. The record lacks any other contemporaneous communications from Ms. Quintana to USAA Life about this claim.

USAA Life found that the suicide exclusions applied and that therefore "the only benefit payable is a sum equal to premiums paid," as stated to Plaintiff over the phone and in a letter dated February 12, 2016. Dkt. #20-26. USAA Life enclosed checks for the total of premiums paid plus interest—$898.11 for one Policy and $765.73 for the other. Dkt. #20-27. Plaintiff Quintana deposited both checks on February 25, 2016. *Id*. The record lacks any contemporaneous communications from Ms. Quintana to USAA Life contesting the amount paid out under the Policies.

On March 21, 2017, a Washington State Certificate of Death was apparently issued changing Mr. Martinez' death from "suicide" to "undetermined." *See* Dkt. #1-3 (Complaint) at

ORDER GRANTING SUMMARY JUDGMENT IN PART AND DENYING MOTION FOR PROTECTIVE ORDER - 4

¶ 3.7, Dkt. #9 (Answer) at ¶ 3.7. This document has not been attached to pleading or briefing on this Motion and is not currently before the Court.

The parties agree that on January 5, 2018, USAA Life sent a letter to Plaintiff Quintana again denying coverage. *See* Dkt. #9 at ¶ 3.9.

### D. Procedural History

On February 7, 2019, Ms. Quintana made a PIP claim to USAA GIC through her current counsel. Dkt. #20-1 ("Weitzel Decl."), ¶ 27. The very next day this lawsuit was filed in state Court. *See* Dkt. #8-1 at 13. Defendants removed to this Court on March 19, 2019. Dkt. #1. Discovery closed in this case on December 16, 2019. Dkt. #14. Plaintiff has not moved to compel discovery or otherwise filed a timely discovery motion. Her motion to continue trial has been denied for failure to demonstrate diligence. Dkt. #32. On December 11, 2019, Defendants moved for a protective order to prevent depositions sought by Plaintiff at the tail end of the discovery period. Dkt. #23.

### III. DISCUSSION

### A. Summary Judgment Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**B. PIP Coverage**

The exhibits presented by Defendants appear to completely foreclose Plaintiff's ability to bring a claim for PIP coverage. Defendants' position on this claim is exceedingly simple—Ms. Quintana and her husband did not check the box for PIP coverage and were repeatedly informed that they were not so covered. This is the reason Plaintiff was not informed that she could seek PIP benefits for injuries sustained by Mr. Martinez back in 2014.

Plaintiff Quintana pleads that the assertion that PIP coverage was waived "is not accurate." Dkt. #1-3 at 2–4. She alleges that USAA GIC failed to respond to her written requests for proof of waiver. *Id*. Now, in response to this Motion, Ms. Quintana has submitted a declaration stating that her husband, not her, purchased auto insurance from USAA in August 2012, and that she has "no recollection of signing a PIP waiver for this policy, electronically or on paper." Dkt. #22-3 at 1. She claims that the exhibits filed by Defendants and produced in discovery, cited above, do not remind her of seeing the PIP waiver or signing it or declining PIP coverage. *Id*. at 2. However, Ms. Quintana presents no evidence or argument to suggest that these records are forged or otherwise factually incorrect.

Instead, Ms. Quintana argues that USAA has not met its burden of showing that a PIP waiver exists under the legal requirements of RCW 48.22.085(2). Dkt. #22 at 6. She argues that by statute the PIP waiver must be signed by the named insured, Mr. Martinez, and that therefore evidence of an electronic signature by Ms. Quintana is insufficient. *Id*. at 7. She also maintains that the electronic signature at issue does not satisfy certain requirements of Washington law. Dkt. #22 at 7–8 (citing RCW 19.34.300) ("that rule is satisfied by a digital signature, if: (a) The digital signature is verified by reference to the public key listed in a valid certificate issued by a licensed certification authority.").

On Reply, Defendants first object to Ms. Quintana's declaration as speculative, relying on hearsay, contrary to authenticated business records, and insufficient to create a genuine issue of material fact. Dkt. #24 at 2. Defendants point out that Ms. Quintana is not questioning the authenticity of the records showing that she e-signed the policy application, or the records showing that she was repeatedly informed that PIP coverage was excluded. The Court generally agrees that Ms. Quintana's declaration alone is insufficient to create a genuine dispute as to a material fact. Whether or not Ms. Quintana remembers filling out the application, these uncontroverted records indicate she was repeatedly informed that she and her husband did not have PIP coverage.

Defendants point out that Ms. Quintana's RCW 48.22.085 arguments are inconsistent with RCW 48.22.005(9), which states, "'Named Insured' means the individual named in the declarations of the policy and includes his or her spouse if a resident of the same household." Dkt. #24 at 4–5. Thus, Plaintiff Quintana *is* a named insured and her waiver of PIP coverage for her and her husband is legally valid. Her contemporaneous explicit certification that she was authorized to act on behalf of her husband, see above, is further proof of this point.

ORDER GRANTING SUMMARY JUDGMENT IN PART AND DENYING MOTION FOR PROTECTIVE ORDER - 7

Defendants also indicate that Ms. Quintana cannot challenge the adequacy of the e-signature by citing to RCW 19.34.300 as that statue has been repealed. *Id.* at 6 (citing 2019 c 132 § 8).

The Court agrees with Defendants. The record shows that Ms. Quintana and Mr. Martinez waived PIP coverage. Plaintiff's arguments to the contrary directly conflict with the statutes cited by Plaintiff. The Court cannot see how a failure to pay out PIP benefits or inform Ms. Quintana of her ability to seek such benefits could possibly be in bad faith. Defendants are entitled to summary judgment on all claims based on the denial of that coverage.

**C. Accord and Satisfaction of the Life Insurance Benefits**

Defendants are not asking the Court to find that Mr. Martinez committed suicide or that the suicide exception was correctly applied. Instead, they make a far narrower argument: that the doctrine of accord and satisfaction bars Plaintiff's claims for further life insurance benefits. Defendants cite RCW 62A.3-311:

> (a) If a person against whom a claim is asserted proves that (i) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, (ii) the amount of the claim was unliquidated or subject to a bona fide dispute, and (iii) the claimant obtained payment of the instrument, the following subsections apply.
>
> (b) Unless subsection (c) applies, the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.
>
> (c) Subject to subsection (d), a claim is not discharged under subsection (b) if either of the following applies:
>
>> (1) The claimant, if an organization, proves that (i) within a reasonable time before the tender, the claimant sent a conspicuous statement to the person against whom the claim is asserted that communications concerning disputed debts, including an instrument tendered as full satisfaction of a debt, are to be sent to a designated person, office, or place, and (ii)

ORDER GRANTING SUMMARY JUDGMENT IN PART AND DENYING MOTION FOR PROTECTIVE ORDER - 8

> the instrument or accompanying communication was not received by that designated person, office, or place.
>
> (2) The claimant, whether or not an organization, proves that within 90 days after payment of the instrument, the claimant tendered repayment of the amount of the instrument to the person against whom the claim is asserted. This subsection (c)(2) does not apply if the claimant is an organization that sent a statement complying with subsection (c)(1)(i).
>
> (d) A claim is discharged if the person against whom the claim is asserted proves that within a reasonable time before collection of the instrument was initiated, the claimant, or an agent of the claimant having direct responsibility with respect to the disputed obligation, knew that the instrument was tendered in full satisfaction of the claim.

Defendants argue that a bona fide dispute existed at the time they mailed the checks to Ms. Quintana because she "sought the entire death benefit under both Policies, a sum totaling $300,000," and because USAA Life "determined only a refund of premium and interest was payable due to the applicable suicide exclusion within each Policy." Dkt. #20 at 14. Defendants do not cite something specific for the assertion that Ms. Quintana sought the entire death benefit. Defendants contend that the February 12, 2016, letter included a "conspicuous statement" that the checks were in full satisfaction of the benefits under the Policies. It is not disputed that she accepted payment by depositing the checks.

Ms. Quintana responds that the letters "say absolutely nothing about satisfaction" and that Ms. Quintana had no way of knowing that "by negotiating these premium refund checks she would be releasing her claims to life insurance policy coverage benefits." Dkt. #22 at 10. Ms. Quintana also argues that the amount of the claim was not "unliquidated." *Id*. She maintains that there is no evidence that the amount of benefits was subject to a bona fide dispute and that she had not retained an attorney until June 2018. *Id*. at 10–11. Ms. Quintana cites *Kibler v. Frank L. Garrett & Sons, Inc.*, 73 Wn.2d 523, 525 (1968) for the proposition that

ORDER GRANTING SUMMARY JUDGMENT IN PART AND DENYING MOTION FOR PROTECTIVE ORDER - 9

"[w]here the debtor pays what in law he is bound to pay and what he admits that he owes, such payment by the debtor and its acceptance by the creditor, even though tendered as payment in full of a larger indebtedness, do not operate as an accord and satisfaction of the entire indebtedness, because there is no consideration therefor." *Id*. at 11. Ms. Quintana argues that an accord and satisfaction under these circumstances would violate Washington law because the payment of premiums for suicide was already required under the Policies. *Id*. at 12.

On Reply, Defendants argue they do not need to prove that the amount of the claim was unliquidated because the statute states "unliquidated **or** subject to a bona fide dispute," and they have proven that the amount was subject to a bona fide dispute. Dkt. #24 at 8. Defendants take issue with all of Plaintiff's arguments but do not directly address the holding of *Kibler*, above.

Although Defendants have been able to demonstrate many of the elements of accord and satisfaction, the Court is most interested in whether there was a bona fide dispute between the parties at the time these checks were sent to Plaintiff and deposited. Defendants have submitted only evidence that Ms. Quintana mailed in a "Claimant's Statement" on January 28, 2016. Dkt. #20-25. Ms. Quintana did not, in this form, demand full payment under the policy or mention a specific dollar amount. She indicated that the cause of death was "suicide." It is entirely possible on this record that she expected to be paid exactly what the Policies said was payable under the suicide exception. Apparently, she had to fill out this form to obtain the modest funds that were mailed to her. Defendants do not submit any evidence indicating Ms. Quintana was disputing the amount she was owed prior to cashing the checks. Given all of the above, the Court would tend to believe that Ms. Quintana actually did *not* dispute what she was owed at this time, and that at some point later, perhaps due to the change in the death

ORDER GRANTING SUMMARY JUDGMENT IN PART AND DENYING MOTION FOR PROTECTIVE ORDER - 10

certificate, she changed her position. The Court agrees with Plaintiff that Defendants have failed to demonstrate as a matter of law that the doctrine of accord and satisfaction is applicable to her claims, and that portion of Defendants' Motion will be denied.

### D. Rule 56(d) Relief

Ms. Quintana Moves Under Rule 56(d) For the Court to defer ruling on her extracontractual claims until after expert disclosures have been completed. Dkt. #22 at 13. Ms. Quintana relies on her Motions to Continue (Dkts. #17 and #21), which have been denied by the Court. She otherwise fails to set forth by affidavit or declaration that, for specified reasons, she cannot present facts essential to justify her opposition to such a ruling. *See* Fed. R. Civ. P. 56(d). Accordingly, the Court will not grant this relief.

### E. Defendants' Motion for Protective Order

The Court finds that Defendants' Motion for Protective Order (Dkt. #23) fails to include a proper meet-and-confer certification as required under Local Civil Rule 26. That rule states, "[a]ny motion for a protective order must include a certification… that the movant has engaged in a good faith meet and confer conference with other affected parties in an effort to resolve the dispute without court action," that the certification "must list the date, manner, and participants to the conference," and that "[a] good faith effort to confer requires a face-to-face meeting or a telephone conference." LCR 26(c)(1). "If the movant fails to include such a certification, the court may deny the motion without addressing the merits of the dispute." *Id.* Here, Defendants say only that they have attached a "copy of the email complying with Federal Rule Civil Procedure 26(c)(1)" as well as the reply from Plaintiff's counsel. Dkt. #23 at 1 (citing Dkt. #23-2). The Court has reviewed these emails and the remainder of the record and sees no evidence that the parties met face-to-face, engaged in a telephone conference, or attempted to

ORDER GRANTING SUMMARY JUDGMENT IN PART AND DENYING MOTION FOR PROTECTIVE ORDER - 11

do either. The attached emails instead demonstrate that the parties were not communicating adequately with each other.

Although the Court could address the merits of this Motion, it will instead deny Defendants' Motion for failure to meet and confer. The Court believes the parties and their counsel can follow the applicable law cited in their briefs and resolve all or many of these issues without a Court order. Given that the rulings in *this* Order may have changed what is relevant in discovery, the Court will direct the parties to meet and confer and file a joint status report on remaining discovery issues.

## IV. CONCLUSION

Having considered the Motions of the parties and the entire record, the Court hereby finds and ORDERS:

1) Defendants' Motion for Summary Judgment (Dkt. #20) is GRANTED IN PART AND DENIED IN PART. Plaintiff's claims against USAA GIC are DISMISSED.

2) Defendants' Motion for Protective Order (Dkt. #23) is DENIED.

3) The parties shall meet and confer face-to-face or via telephone as stated above.

4) The parties shall file a joint status report no later than **seven (7) days from the date of this Order** detailing: a) their efforts to resolve this discovery dispute, b) what they believe are remaining discovery issues, and c) proposed solutions for resolving those issues within the current deadlines in this case.

DATED this 17th day of January 2020.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER GRANTING SUMMARY JUDGMENT IN PART AND DENYING MOTION FOR PROTECTIVE ORDER - 12